IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
April 19, 2004 Session

## STATE OF TENNESSEE, EX REL., ASHLEY MITCHELL v. PATRICK D. ARMSTRONG

Appeal from the Juvenile Court for Shelby County
No. J8823     Herbert J. Lane, Judge

No. W2003-01687-COA-R3-JV - Filed September 3, 2004

This is a Title IV child support case. The mother established paternity against the father in juvenile court, and the father was ordered to pay child support. Prior to establishing the father's paternity, the mother had intermittently received public assistance. Consequently, the father was to send the child support payments to the State's collection and disbursement unit, pursuant to Title IV, chapter D of the Social Security Act. The father failed to pay the required child support. The State then intervened by filing a petition for contempt against the father. In the contempt hearing, the mother asked that the father's child support obligation be terminated. The trial court suspended the father's obligation to pay current child support in a set amount through the State disbursement unit, with the understanding that the father would pay child support in an undetermined amount directly to the mother, pursuant to an unwritten private agreement between the mother and the father. The father was required to make payments to the State on his past arrearages. The State appealed. We reverse and remand, holding that the trial court was required to have the child support payments, in a set amount that comports with the child support guidelines, sent to the State collection and disbursement unit, and remand for modification of the amount paid on the father's arrearages.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court is Reversed and Remanded

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, J., and DAVID R. FARMER, J., joined.

Paul G. Summers, Attorney General and Reporter, and Stuart F. Wilson-Patton, Senior Counsel for the Office of the Attorney General, for the appellant State of Tennessee.

Patrick D. Armstrong, *pro se*.

**OPINION**

Ashley Mitchell ("Mother") gave birth to a son, Collin Mitchell ("Collin"), on June 11, 1996. Mother and Collin received public assistance benefits from the State intermittently for approximately three to four years. On October 23, 1998, Mother filed a petition against Defendant/Appellee Patrick D. Armstrong ("Father") in Juvenile Court to establish his parentage and to require him to pay child support. Father had not previously claimed parentage or paid any child support.

On March 12, 1999, after genetic testing established Father's parentage with 99.99% probability, the Juvenile Court referee found that Father was Collin's biological father. The referee required Father to pay the medical expenses incident to Collin's birth, $8,194 total in past child support, retroactive to the date Collin was born, $241 per month in current child support, the Clerk's fee, and the cost of the parentage testing. Father's child support payments were directed to go to the Tennessee Department of Human Services through income assignment, pursuant to Title IV, chapter D of the Social Security Act ("Title IV-D") requiring that child support payments be so directed when the obligee parent has received public assistance.[1] The Juvenile Court referee's findings and recommendations were confirmed by the Juvenile Court judge later that day.

Father failed to pay the required child support. Consequently, the Plaintiff/Appellant State of Tennessee ex rel., Ashley Mitchell ("the State") filed a petition for contempt, alleging that Father had willfully violated the trial court's March 12, 1999 order by failing to pay child support. The State also requested that the trial court determine Father's total child support arrearages and set a monthly payment amount.

The parties appeared before Juvenile Court Referee Felicia Hogan on November 15, 2002. Father's child support arrearage at that time was $13,157.15. Father was not represented by counsel. Father told the Referee that he wanted to hire an attorney rather than accept a court-appointed attorney. The Referee then indicated that she was prepared to continue the proceedings. Before the parties were dismissed, however, Mother requested that Father's child support obligation be terminated. The Referee said she would consider Mother's request, but told Mother that she was not permitted to completely absolve Father of his financial responsibilities:

> [Y]ou can't walk away and say, '[W]ell, I don't want to be bothering him anymore. I don't need anything. I'll take care of the child myself.' He still has to help you

---

[1]The record reflects that child support payments were to be made to the Clerk of Court. However, section 36-5-116 of the Tennessee Code Annotated provides that "[a]ll order[s] in Title IV-D support cases, and all orders for income assignments which have directed support be paid to the *clerk of any court*, and which are subject to the provisions of 42 U.S.C. § 654b, shall be deemed to require that the support be sent to the *central collection and disbursement unit*." Tenn. Code Ann. § 36-5-116(a)(1) (2001 & Supp. 2003)) (emphasis added). By statute, the Tennessee Department of Human Services is the "central collection and disbursement unit" for the State of Tennessee. *Id.*

outside of court. And the amount that he pays you outside of court still has to conform to the guidelines.

The Referee initially told Mother that Father was still obligated to pay her the original amount of child support, $241 a month, and told her "any agreement you have outside of Court, does have to conform to whatever the guidelines says he should be paying." However, when counsel for the State asked for clarification, Referee Hogan changed her ruling, stating that she was in fact approving an unwritten, undetermined private agreement between Mother and Father that Father would pay child support in an undetermined amount directly to Mother, and finding that the unwritten private agreement conformed with the guidelines and setting child support at whatever amount Mother and Father deemed appropriate:

> MR. MCCALL: Well, just to make sure I get the Order correct as far as for the current support obligation, the Court's finding that the mother is requesting that she no longer wants IV-D services. And upon private agreement, is approved by the Court for him to pay $241 directly to the mother. Would that be appropriate, Your Honor?

> THE COURT: No. That is their remake conforms to the guidelines. I'm not putting a figure in there. I don't know what he's making now. I'm not going to even get—go into that.

> MR. MCCALL: Well, I don't think we can—how can the Court make the determination in accordance to the guidelines, unless we know what the income is unless it's this amount?

> THE COURT: Because I'm leaving it up to these two adults who have these children—child or children, to make that determination themselves.
> . . . .

> I find that their private agreement is in conformance to the guidelines.

Thus, Referee Hogan found that Mother and Father's unwritten private agreement, the terms of which were not disclosed, conformed to the guidelines, in the absence of any indication of how much the monthly child support obligation would be, how much Father earned, or whether Father was subject to other child support orders. Referee Hogan also found that Father owed $13,157.15 in arrearages and required Father to pay the State $175 per month until the arrearages were paid. The State's objection that $175 per month "barely pays the interest" on Father's arrearage was ignored. Referee Hogan signed the order on November 15, 2002. Even though the record contained no evidence of Father's income, his employment, his assets, his earning capacity, or whether he was subject to other child support orders, the order found Father had the ability to pay only $300 of the arrearage and required him to be confined to jail until he paid the $300. Father's child support obligation to Mother was suspended as of December 1, 2002, and Father was required to pay $175

per month to the State on his outstanding arrearage. The Juvenile Court judge confirmed the findings and recommendations of Referee Hogan the same day.

On November 21, 2002, the State filed a request for a hearing before the Juvenile Court judge. On March 20, 2003, the State and Mother appeared before Juvenile Court Referee Herbert Lane, who was appointed a Special Judge to hear this matter. The State argued that Referee Hogan erred in suspending Father's child support obligation in favor of the private agreement, first because the private agreement was not in accordance with the guidelines or incorporated into the final order, and second because the matter involved Title IV-D, which requires child support to be paid directly to the State. Special Judge Lane addressed Mother:

> THE COURT: Did you ask that the support be suspended, ma'am?
>
> MS. MITCHELL: Yes.
>
> THE COURT: Are you still of that opinion?
>
> MS. MITCHELL: Yes.
>
> THE COURT: And why are you asking that the support be suspended?
>
> MS. MITCHELL: Because I—he—I'm getting help. He's helping me with the child.
>
> * * *
>
> THE COURT: Are you asking for the State to assist you anymore, ma'am?
>
> MS. MITCHELL: No, I'm not.
>
> * * *
>
> THE COURT: You want the matter suspended? You don't want any IV-D services?
>
> MS. MITCHELL: Correct.
>
> THE COURT: All right. Referee's ruling will be affirmed.

Thus, Special Judge Lane reconfirmed Referee Hogan's November 15 ruling, apparently because Mother requested the suspension of child support and because Mother was no longer receiving Title IV-D assistance from the State. The order was signed on March 20, 2003. The State filed a "Motion to Alter or Amend" on April 17, 2003, which was heard very briefly and summarily denied by

Referee Lane on May 15, 2003. The written order was signed the same day. From that order, the State now appeals.[2]

On appeal, the State argues that the Juvenile Court erred in suspending the child support payments in favor of a private agreement, because the trial court did not set an amount for child support in accordance with the child support guidelines. The State also maintains that, although Mother was no longer receiving Title IV-D benefits, this remained a Title IV-D case, and consequently payments of current child support are required to be made to the State for disbursement. Finally, the State seeks to have the amount of monthly arrearages paid to the State increased to an amount that will permit the arrearages to be paid off within ten years.

Our review of a trial court's decision regarding child support modifications is *de novo* upon the record with a presumption of correctness of all findings of fact, unless the evidence preponderates against the findings. Tenn. R. App. P. 13(d); ***Leach v. Leach***, No. W2000-00935-COA-R3-CV, 2001 WL 720635, at *3 (Tenn. Ct. App. June 25, 2001). Because there is no dispute regarding the trial court's factual findings, and involves only questions of law, our review in this appeal is *de novo*, upon the record. ***Id.***

We first address the State's assertion that the trial court erred in suspending child support payments in favor of an unwritten private agreement between Mother and Father that Father would pay child support in an undetermined amount directly to Mother. Under federal and state law, the State is required to operate a "central collection and disbursement unit" in order to process all child support payments in cases meeting the criteria of Title IV-D. Tenn. Code Ann. § 36-5-116(a)(1) (2001 & Supp. 2003); ***see also*** 42 U.S.C. §§ 654; 654b. This essentially includes cases "in which the State is providing services on behalf of a parent relating to paternity or child support establishment or enforcement, either by request or pursuant to the custodial parent's receipt of public assistance benefits under Title IV-A." ***State ex rel. Jacqueline Patterson v. French***, No. W2000-02668-COA-R3-CV, 2002 WL 1349498, at *3 (Tenn. Ct. App. Feb. 5, 2002) (citing 42 U.S.C. § 654(4); Tenn. Code Ann. § 71-3-124(c)). The Tennessee General Assembly assigned the role of "central collections and disbursement unit" to the Tennessee Department of Human Services. Tenn. Code Ann. § 36-5-116(a)(1) (2001 & Supp. 2003). Thus, in Title IV-D cases, the trial court does not have the discretion to permit child support payments in such cases to be made directly to the obligee parent instead of to the Tennessee Department of Human Services. ***See French***, 2002 WL 1349498, at *4.

Further, when a parent receives public benefits from the State, federal and state law both provide that the parent has assigned his or her right to support from any other source to the State, 42 U.S.C. § 608(a)(3); Tenn. Code Ann. § 71-3-124(a)(1) (Supp. 2003), and payment of all support must be made to the State. ***See*** 45 C.F.R.§ 302.32(a). Under federal law, a request by the recipient parent to end Title IV-D services may be honored only if the recipient meets at least one of the

---

[2]Father did not file a brief in this appeal. Thus, this matter is considered on the record, the State's brief, and the State's oral argument.

criteria set forth in the regulation. 45 C.F.R. § 303.11. Since Father's arrearage had not yet been paid, Mother did not meet any of the criteria listed and thus could not end Title IV-D services. 45 C.F.R. § 303.11. Thus, the trial court did not have the discretion to honor Mother's request to end or suspend Father's child support obligation or to end the Title IV-D services provided to her.

In the present case, it was clearly error for the trial court to permit Mother and Father to bypass the Tennessee Department of Human Services, and to approve an arrangement whereby Father supposedly paid child support in an unspecified amount directly to Mother. Mother received public assistance benefits prior to the establishment of Father's paternity. The contempt proceedings initiated by the State were brought on Mother's behalf, in order to compel the payment of current child support and arrearages by Father. Thus, this is clearly a Title IV-D case, and the trial court did not have discretion to direct payments away from the Tennessee Department of Human Services. *See French*, 2002 WL 1349498, at *4. Additionally, it was error for the trial court to give effect to Mother's request to end Father's child support obligation and Title IV-D services, because she had not yet been paid the arrearages owed her by Father, and the State had not yet been paid its assigned arrearage. *See* 42 U.S.C. §§ 608(a)(3), 657; 45 C.F.R.§§ 302.32(a), 303.11; Tenn. Code Ann. § 71-3-124(a)(1) (Supp. 2003). Therefore, we reverse the trial court's suspension of Father's current child support obligation. In the proceedings below, there was no request for modification of the amount of Father's child support obligation. Accordingly, on remand, Father shall be required to pay to the Tennessee Department of Human Services the $241 per month previously ordered in the paternity proceedings.

We next address the State's request to modify Father's monthly arrearage payments to an amount that will pay off his $13,157.15 in arrearages within ten years. Tennessee law requires that child support arrearages be paid off in reasonable amounts within a reasonable amount of time. Tenn. Code Ann. § 36-5-804(a) (2001). Here the applicable statute of limitations is the ten-year statute for actions on judgments and decrees of courts. *See* Tenn. Code Ann. § 28-3-110 (2000). Consequently, to ensure that the statute of limitations does not run on Father's obligation, the payment schedule should be structured to provide for payment within ten years from accrual. Utilizing this standard, the trial court's award of $175 per month for payment of Father's arrearage is insufficient and must be reversed, and the trial court is directed on remand to set a payment amount and schedule which permits payment of the arrearage within ten (10) years from accrual.

The decision of the trial court is reversed and the cause is remanded for further proceedings not inconsistent with this Opinion. Costs are taxed against the Appellee Patrick D. Armstrong, for which execution may issue, if necessary.

_____

HOLLY M. KIRBY, JUDGE